**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF CARPENTERS' EMPLOYEE BENEFITS FUND; TRUSTEES OF CARPENTERS' PENSION TRUST FUND - DETROIT AND VICINITY; TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF CARPENTERS' ANNUITY FUND; TRUSTEES OF THE MICHIGAN STATEWIDE CARPENTERS AND MILLWRIGHTS JOINT APPRENTICESHIP AND TRAINING FUND; TRUSTEES OF THE CARPENTERS' LABOR MANAGEMENT PRODUCTIVITY AND TRAINING FUND; TRUSTEES OF THE CARPENTERS' APPRENTICE REIMBURSEMENT FUND; TRUSTEES OF THE CARPENTERS' WORKING DUES FUND; TRUSTEES OF THE CARPENTERS' INDUSTRY ADVANCEMENT FUND; TRUSTEES OF THE CARPENTER'S SPECIAL ASSESSMENT FUND; TRUSTEES OF THE CARPENTERS' GUARANTY FUND; THE MICHIGAN REGIONAL COUNCIL OF CARPENTERS, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA;

Case No. 19-12539
Hon.
Magistrate Judge

                Plaintiffs,

v.

HUDSON INTERIORS, INC. a Michigan limited liability company, MARK HUDSON, an individual, jointly and severally.

                Defendants.

---

NOVARA TESIJA & CATENACCI, PLLC
Bryan M. Beckerman (P51925)
Alexander A. Dombrow (P82753)
Attorneys for Plaintiffs
2000 Town Center, Ste. 2370
Southfield, MI 48075
(248) 354-0380
bmb@ntclaw.com
aad@ntclaw.com

---

**PLAINTIFFS' COMPLAINT**

1

NOW COME Plaintiffs, by and through their attorneys, NOVARA TESIJA & CATENACCI, PLLC, and for their Complaint, state as follows:

1.      The Trustees of the Michigan Regional Council of Carpenters' Employee Benefits Fund; Trustees of the Carpenters' Pension Trust Fund – Detroit and Vicinity; Trustees of the Michigan Regional Council of Carpenters' Annuity Fund; Trustees of the Michigan Statewide Carpenters and Millwrights Joint Apprenticeship and Training Fund; Trustees of the Carpenters' Labor Management Productivity and Training Fund; Trustees of the Carpenters' Apprentice Reimbursement Fund; Trustees of the Carpenters' Working Dues Fund; Trustees of the Carpenters' Industry Advancement Fund; Trustees of the Carpenter's Special Assessment Fund; Trustees of the Carpenters' Guaranty Fund; United Brotherhood of Carpenters and Joiners Of America; (collectively "the Funds") are each a jointly-trusteed fund established pursuant to Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 186 and Sections 302 and 515 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sections 1132 and 1145, and bring this action on behalf of their individual participants.

2.      The Michigan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America (hereinafter "MRCC" or "Union") is a labor organization, as defined in Section 451 of the National Labor Relations Act, 29 U.S.C. § 152 (5), with its principal place of business located at 400 Renaissance Center, Suite 1010 Detroit, Michigan 48243.

3.      Upon information and belief, Defendant HUDSON INTERIORS, INC. (hereinafter "HUDSON"), is a company duly formed and doing business in the State of Michigan, and is located at 44850 Vic Wertz Drive, Clinton Township, Michigan 48036.

4. Upon information and belief, Defendant MARK HUDSON (hereinafter "MARK HUDSON") is an owner and/or officer of HUDSON, and is doing business at 44850 Vic Wertz Drive, Clinton Township, Michigan 48036.

5. Jurisdiction in this Court is founded on Section 301(a) of the LMRA, as amended, 29 U.S.C. Section 185(a) and Sections 502 and 515 of ERISA, 29 U.S.C. Section 1132 and 1145, as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA") and Federal common law. This Court also has supplemental jurisdiction of any state-law claims ancillary to the relief sought herein.

## COUNT I
### ERISA: DELINQUENT CONTRIBUTIONS

6. Plaintiffs hereby repeat, re-allege and incorporate the allegations contained in Paragraphs 1 through 5 of their Complaint as fully set forth herein.

7. Section 515 of ERISA provides that "every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

8. Section 502 of ERISA provides a federal forum for enforcement of the various duties imposed by ERISA, including, but not limited to, allowance of a lawsuit to enjoin any act which violates ERISA or to obtain other appropriate legal and equitable relief.

9. Pursuant to the collective bargaining agreement (hereinafter "CBA") between Defendant HUDSON and the Union, Defendant HUDSON agreed to make employee fringe benefit contributions and assessments to the Funds for each employee covered by the CBA, which are individuals in the appropriate bargaining unit who perform covered

work (hereinafter "Employees"), and to be bound by the terms and conditions set forth in the Funds' Trust Agreements (hereinafter the "Trust Agreements").  Defendant HUDSON has copies of all records within its files; notwithstanding, Plaintiffs have attached a copy of the CBA, along with its signature page hereto as **Exhibit 1** and the relevant Trust Agreements as **Exhibit 2, 2-1 and 2-2**.

10.     The Funds are third-party beneficiaries of the parties' CBA.

11.     Defendant HUDSON has violated both its contractual and statutory obligations by failing to make all of the fringe benefit contributions and assessments due on behalf of each Employee covered by the CBA and as incorporated in same, the relevant Trust Agreements.

12.     As a result of Defendant HUDSON's violations of its contractual and statutory obligations, Defendant HUDSON has violated ERISA, the CBA and the relevant Trust Agreements.

13.     Plaintiffs are entitled to all remedies under ERISA, including, but not limited to, payment of fringe benefit contributions owed, audit assessments, liquidated damages, attorneys' fees and costs.

14.     At all relevant times, Defendant HUDSON was bound to the parties' CBA, which includes, but is not limited to all relevant time periods associated in this case.

15.     The Funds have been damaged in an amount of $152,369.56 including Audit liquidated damages, interest and liquidated damages resulting from late payments pursuant to the June 10, 2019 Audit (see **Exhibit 3** attached hereto and made a part hereof by reference).

16.     Defendants HUDSON and MARK HUDSON, jointly and severally, have fraudulently avoided paying required benefit contributions to Plaintiffs and engaged in misconduct, which includes, but is not limited to, converting money paid to themselves for the purpose of paying benefit contributions to Plaintiff Funds and retaining said monies required to be paid for the benefit of its employees.

17.     As an owner and/or officer and person who makes decisions, MARK HUDSON is responsible for Defendant HUDSON's compliance with its contractual and statutory obligations to Plaintiffs.  Notwithstanding, Defendants HUDSON and MARK HUDSON, upon information, knowledge and belief, failed to follow business formalities, had personal knowledge of Defendant HUDSON's undercapitalization, and with the requisite intent, fraudulently and improperly diverted monies which were to be paid for the benefit of its employees.

18.     Because of Defendants HUDSON's and MARK HUDSON'S actions and/or inactions cited within this Complaint, Plaintiffs have suffered financial losses.

        WHEREFORE, Plaintiffs request that the Honorable Court grant the following relief:

a.      Enter a judgment in Plaintiffs' favor against Defendants HUDSON and MARK HUDSON for an amount of $152,369.56, together with any accumulated interest thereon, actual attorney fees, court costs, audit and other collection costs and other sums as may become due or discovered to be due the Funds during the pendency of this action;

b.      That jurisdiction of this matter be retained pending compliance with the Court's orders; and

c.      Any such other, further or different relief as may be just and equitable under the circumstances.

## COUNT III
## BREACH OF FIDUCIARY DUTIES

19.    Plaintiffs hereby repeat, re-allege and incorporate the allegations of Paragraphs 1 through 18 of their Complaint as fully set forth herein.

## GENERAL

20.    Participants of the Funds were employed by Defendant HUDSON to perform work and provide labor on various construction projects in the State of Michigan.

21.    The construction projects were within the Union's jurisdiction pursuant to the CBA executed by the relevant parties.

22.    The participants of the Funds provided labor and services, on behalf of Defendant HUDSON, pursuant to the parties' CBA and thus earned outstanding fringe benefit contributions in connection with and in furtherance of their employment and labor on said projects.

23.    Defendant HUDSON was obligated to pay fringe benefit contributions to the Funds for these participants on said projects.

24.    The outstanding accrued fringe benefit contributions were properly payable to the Funds administered by Plaintiffs when due.

25.    Defendant HUDSON received monies on said projects but failed to pay all of the fringe benefit contributions owed the Funds on said projects when due.

26.    The accrued fringe benefit contributions and monies in Defendant HUDSON's possession, custody and/or control from said projects which were available to pay the participants' accrued fringe benefit contributions were to be held in trust by Defendants in their capacity as fiduciaries, as required by ERISA, 29 U.S.C. §1145, until Defendants paid to Plaintiffs said fringe benefit contributions in accordance with the terms and conditions of their CBA and Trust Agreements.

27.     The Trust Agreements for the Funds, incorporated by the relevant CBA (see **Exhibit 2,** Article II, Section 2.3, Pages 22-23; **Exhibit 2-1,** Article VI, Section 8, Page 23; and **Exhibit 2-2,** Article II, Section 2.3, Page 34-35, attached hereto and made a part hereof by reference) provide that unpaid contributions become plan assets at the time they become due.

28.     Defendants, including the individual Defendant, being MARK HUDSON had actual and/or constructive notice of the above-referenced Trust Agreements and their respective amendments.

29.     Thus, Defendant HUDSON accrued fringe benefit contributions owed to the Funds on said projects, that became plan assets of the respective Funds administered by Plaintiffs at the time they became due as provided for in the Trust Agreement and Plan documents, within the meaning of ERISA §3(21)(A); 29 U.S.C. §1002(21)(A).

30.     ERISA provides that a person is a fiduciary with respect to the Funds to the extent that the person exercises any discretionary authority or control with the respect to the disposition of Plan assets. ERISA §3(21)(A); 29 U.S.C. § 1002(21)(A).

31.     Owners and/or officers of a company are considered fiduciaries of the Funds based upon the conduct and authority of said people, including, but not limited to, their personal exercise of discretionary authority and control over Funds' assets.

### **MARK HUDSON**

32.     Defendant MARK HUDSON as an owner and/or officer of Defendant HUDSON, upon information, knowledge and belief, personally exercised discretionary authority and control over the disposition of Defendant HUDSON's accrued fringe benefit contributions, being plan assets recognized by ERISA.

33.     Defendant MARK HUDSON, as an owner and/or officer of Defendant HUDSON is considered a fiduciary of the Funds based upon his conduct and authority over the contributions associated with same.

34.     Upon information, knowledge and belief, Defendant MARK HUDSON, as an owner and/or officer of Defendant HUDSON, personally exercised discretionary authority and control over the disposition of Defendant HUDSON's accrued fringe benefit contributions, which are plan assets as defined by ERISA and the relevant Trust Agreement and Plan documents.

35.     Since Defendant MARK HUDSON, as an owner and/or officer of Defendant HUDSON, personally exercised discretionary authority and control over Defendant HUDSON's accrued fringe benefit contributions, being plan assets, he is a fiduciary of the Funds.

36.     Although legally and contractually obligated to do so, Defendant MARK HUDSON failed to turn over the above-mentioned plan assets by failing to pay all of the accrued outstanding fringe benefit contributions to Plaintiffs when due.

37.     Upon information, knowledge and belief, Defendant MARK HUDSON utilized the accrued outstanding fringe benefit contributions and monies within his possession, custody and/or control for purposes other than payment to Plaintiffs.

38.     In failing to turn over such plan assets to Plaintiffs, Defendant MARK HUDSON violated 29 U.S.C. §§1145, 1104 and 1109, and his obligations under the CBA and Trust Agreements.

39.     Defendant MARK HUDSON' failure to turn over the plan assets, failure to make fringe benefit contributions to Plaintiffs, failure to account for those contributions, and

misuse of funds and monies otherwise payable to Plaintiffs, constitutes a breach of fiduciary duties regarding the Funds pursuant to 29 U.S.C. §1104(a)(1)(A) and are violations of 29 U.S.C. §§ 1145, 1104 and 1109(a).

40.     Thus, by directing that Defendant HUDSON's assets, which were owed to the Funds, be paid for other purposes instead of being deposited with the Funds for their participants and beneficiaries, Defendant MARK HUDSON failed to discharge his fiduciary duties with respect to the Funds solely in the interest of the participants and beneficiaries as required by ERISA 404(a)(1); 29 U.S.C. §1104(a)(1).

41.     ERISA imposes personal liability on a fiduciary who breaches fiduciary duties. 29 U.S.C. §1109.

42.     As a result of his above-mentioned actions, Defendant MARK HUDSON breached his fiduciary duties owed to the Funds and is thus, personally liable to the Funds for such breaches.

43.     Defendant MARK HUDSON knew or should have known that he would be held personally liable for his above-referenced actions.

44.     ERISA also provides that if there is a loss caused by a breach of fiduciary duty, the fiduciary must make the Plan whole by restoring any losses caused by the breach. 29 U.S.C. §1109.

45.     Due to the above-mentioned actions of Defendant MARK HUDSON, the loss to the Funds is to be determined.

46.     Defendant MARK HUDSON, as a fiduciary, must make the Funds whole by restoring the above-mentioned losses to be determined, to the Funds.

47.     As stated within, the Funds have been damaged in an amount to be determined because of Defendant MARK HUDSON's breach of his fiduciary duties.

WHEREFORE, Plaintiffs request that the Court grant the following relief:

   a.  Enter a judgment in the Plaintiffs' favor against Defendant HUDSON and Defendant MARK HUDSON for an amount of $152,369.56, together with any accumulated interest thereon, actual attorney fees, court costs, audit and other collection costs and other sums as may become due or discovered to be due the Funds during the pendency of this action;

   b.  That jurisdiction of this matter be retained pending compliance with the Court's orders; and

   c.  Enter a declaratory order finding that Defendant HUDSON is bound by the CBA; and

   d.  Any such other, further or different relief as may be just and equitable under the circumstances.

## COUNT IV
## BUILDERS TRUST FUND

48.     Plaintiffs hereby repeat, re-allege and incorporate the allegations of Paragraphs 1 through 51 of their Complaint as fully set forth herein.

49.     Participants of the Funds were employed by Defendants to perform work on various construction projects in the State of Michigan.

50.     Defendants have failed to pay all of the fringe benefit contributions owed the Funds on said projects.

51.     The Michigan Building Contract Fund Act (the "Act"), MCLR 570.151 et seq., imposes a trust on funds paid to a building contractor with subcontractors and material men as beneficiaries of said trust.

52.     Under the Act, Defendants are fiduciaries and trustees for the Funds' participants, who are the beneficiaries of all monies paid to Defendants on said projects.

53.     The Defendants have failed to pay over to the Funds the monies held in trust and covered by the Act, which are due the Plaintiffs.

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.      Enter a judgment in the Plaintiffs' favor against Defendants jointly and severally, for an amount of $152,369.56, together with any accumulated interest thereon, actual attorney fees, court costs, audit and other collection costs and such other sums as may become due the Funds during the pendency of this action;

b.      That jurisdiction of this matter be retained, pending compliance with the Court's orders; and

c.      Any such other further or different relief as may be just and equitable under the circumstances.

Respectfully submitted,

NOVARA TESIJA & CATENACCI, PLLC

BY:     /s/Bryan M. Beckerman
        Bryan M. Beckerman (P51925)
        Alexander A. Dombrow (P82753)
        Attorneys for Plaintiffs
        2000 Town Center, Suite 2370
        Southfield, MI  48075-1314
        (248) 354-0380
        bmb@ntclaw.com
        aad@ntclaw.com

Dated: August 27, 2019
W:\FUNDS\Mrcc\LITIGATION\Hudson Interiors\2019\Complaint - June 10, 2019 Audit - 8.27.2019.Docx